1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT TACOMA

10

SHANNON O'BRIEN, a single woman,

11

Plaintiff,

12

v.                                                        Case No. C04-5458FDB

13

CITY OF TACOMA, a municipal corporation;      ORDER GRANTING DEFENDANTS'
14
MICHAEL TORRES, Tacoma Police                MOTIONS FOR SUMMARY
Department officer; DAVID FISCHER,            JUDGMENT RE ESTOPPEL &
Tacoma Police Department officer,             1983 & NEGLIGENCE CLAIMS
15

Defendants.
16

17
**INTRODUCTION**

18
        Plaintiff O'Brien brings claims of negligence, false arrest, and violation of 42 U.S.C. § 1983

19
arising when O'Brien tried to fill a prescription for Percocet, a pain medication, at Walgreen's

20
Pharmacy on July 6, 2002.  The pharmacist, Chad Randall, was suspicious of the prescription, called

21
the physician's office (University of Washington Medical Center Neurosurgery Department) and

22
spoke with the physician on call.

23
        Plaintiff's physician was neuro-oncologist, Alexander Spence, M.D., but the pharmacist

24
spoke with Dr. Walker, a resident physician in Dr. Spence's department, who informed the

25
pharmacist that Dr. Spence was unavailable and that he could neither confirm nor deny the validity of

26
ORDER - 1

1   O'Brien's prescription.  Dr. Walker advised the pharmacist to inform O'Brien that if she required

2   immediate pain control, she should visit the UW Emergency Room, and the pharmacist made a

3   handwritten note of this advice.  The pharmacist at no time talked with Dr. Spence nor did he access

4   Walgreen's database that would have revealed numerous prior occasions when Dr. Spence had

5   prescribed Percocet and other pain relievers for O'Brien.

6        The pharmacist then called 911 and reported he had a potentially forged prescription stating:

7   "That the doctor said they didn't write [it], and they gave me a little case number and said, you

8   know, if she comes back to get it, call 911."  When O'Brien came back the next day, the pharmacist

9   again called the police, Defendants Officers Torres and Fischer responded and arrested O'Brien for

10  prescription forgery.

11       In January 2003, Plaintiff sued Walgreen's in Pierce County Superior Court alleging, among

12  other things, that Pharmacist Randall's failure to provide accurate and truthful information to the

13  Tacoma police was the proximate cause of her arrest and resulting damages.  Walgreen's asserted

14  that some of the damages were caused in whole or in part by, among others, the Tacoma Police

15  Department.  Nevertheless, in August 2003, the parties filed a Confirmation of Joinder of Parties,

16  Claims and Defenses with the Superior Court, affirming that there were no additional parties to be

17  named or additional claims to be asserted.  (Homan Aff. Ex. 15)

18       Defendants move for summary judgment asserting estoppel and release and move separately

19  for summary judgment regarding Plaintiff's § 1983 and negligence claims. Defendants have filed

20  briefs in opposition.  For the reasons stated below, Defendants' motion must be granted.

21                          **SUMMARY JUDGMENT STANDARD**

22            Summary judgment is proper if  the moving party establishes that there are no genuine

23  issues of material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If the

24  moving party shows that there are no genuine issues of material fact, the non-moving party must go

25  beyond the pleadings and designate facts showing an issue for trial.  *Celotex Corp. v.  Catrett*, 477

26  ORDER - 2

1  U.S. 317, 322-323 (1986).  Inferences drawn from the facts are viewed in favor of the non-moving

2  party.  *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

3        Summary judgment is proper if a defendant shows that there is no evidence supporting an

4  element essential to a plaintiff's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).   Failure of

5  proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can

6  exist and summary judgment is mandated.  *Celotex*, 477 U.S. 317, 322-23 (1986).  The nonmoving

7  party "must do more than show there is some metaphysical doubt as to the material facts."

8  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

9                                        **DISCUSSION**

10  ***Judicial Estoppel***

11        Defendants first argue dismissal based on the doctrine of judicial estoppel because Plaintiff

12  O'Brien had earlier asserted that another party with whom she has settled, Walgreen's, was solely

13  responsible for her arrest and resulting damages, and now O'Brien is attempting to assert that

14  Defendants in this action are liable for her arrest.  Judicial estoppel "precludes a party from gaining

15  an advantage by taking one position, and then seeking a second advantage by taking an incompatible

16  position."  *Risetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).  The

17  Court explained:

18          The policies underlying preclusion of inconsistent positions are general considerations
            of the orderly administration of justice and regard for the dignity of the judicial
19          proceedings. ... Judicial estoppel is intended to protect against a litigant playing fast
            and loose with the courts. ... Because it is intended to protect the dignity of the
20          judicial process, it is an equitable doctrine invoked by a court at its discretion.

21  *Id.* at 601.  "Judicial estoppel applies to a party's stated position whether it is an expression of

22  intention, a statement of fact, or a legal assertion."  *Wagner v. Professional Engineers in California*

23  *Gov't.,* 354 F.3d 1036 (9th Cir. 2004).  The "doctrine of judicial estoppel is not confined to

24  inconsistent positions taken in the same litigation."  *Risetto,* 94 F.3d at 605.  "... [F]ederal law

25  governs the application of judicial estoppel in federal court.  Judicial estoppel enables a court to

26  ORDER - 3

1  protect itself from manipulation." *Id.* at 603.  *Risetto* also held that "a favorable settlement

2  constitutes the success required under the so called majority view," that the statement be actually

3  adopted by a court.  *Id.* at 605.  In *Risetto* the settlement was of a workers' compensation

4  proceeding where the plaintiff succeeded in obtaining disability benefits on her workers'

5  compensation claim.

6        The situation in this case is similar to that in *Risetto*.  Plaintiff expressly pled that her arrest

7  and subsequent damages were caused solely by the actions of the Walgreen's pharmacist; Plaintiff

8  signed a confirmation of Joinder representing that there were no additional parties to be named and

9  no additional claims to be asserted as a result of the incident that was the subject of the lawsuit;

10  Plaintiff stated that her arrest and damages were solely Walgreen's fault and "but for" the

11  pharmacist's "negligence and stupidity" she never would have been arrested.  (Homan Decl. Ex. 12,

12  p. 1, ll 21-21; p. 5, ll 5-7.)  The assertion that the pharmacist had both lied to the police and had

13  failed to provide the police with complete information and that "but for" this conduct the arrest

14  would never have occurred would have been inconsistent with claims of false arrest and negligence

15  against the officers and would have undermined the claim against Walgreen's.  Plaintiff ultimately

16  settled her claims against Walgreen's for $45,000.00.

17        Plaintiff's argument that the City failed to disclose that it had possessed the prescription slip

18  giving arise to O'Brien's arrest until the officers' depositions, is unavailing, as the City was not a

19  party to the state court lawsuit.  Moreover, a copy of the prescription, front and back, was attached

20  to Officer Darland's incident report and logged into evidence.  (Homan Decl. Ex. 16.)

21        The Court concludes that Plaintiff's claims against the City of Tacoma and the police officers

22  should be dismissed pursuant to the doctrine of judicial estoppel.

23  ***§ 1983 and Negligence Claims***

24                                    **I**

25        The Defendants City and police officers move for summary judgment on Plaintiff's § 1983

26  ORDER - 4

1  and negligence claims.  Defendants argue that (1) the facts and law do not establish a § 1983

2  violation, as the officers had probable cause to make the arrest; (2) there is insufficient evidence to

3  support a prima facie case of municipal liability under § 1983 against the City of Tacoma; and (3) the

4  negligence claims are barred by the public duty doctrine.

5         To establish a cause of action under § 1983 a plaintiff must establish: (1) that a person has

6  deprived the plaintiff of a federal constitutional or statutory right and (2) that the person acted under

7  color of state law.  42 U.S.C. § 1983.  O'Brien has failed to establish the first element.

8         O'Brien alleges that she was arrested without probable cause in violation of her Fourth

9  Amendment rights.  Probable cause exists if, "at the moment the arrest was made ... the facts and

10  circumstances with [the officers'] knowledge and of which they had reasonably trustworthy

11  information were sufficient to warrant a prudent man into believing" that a crime was being or had

12  been committed.  *Brian v. Hunter*, 502 U.S. 224, 228 (1991).  Here, the officers had probable cause

13  to believe that the plaintiff was attempting to fill a forged prescription, in violation of Washington's

14  Controlled Substance Act.  (RCW 69.50.403 makes it unlawful for any person to knowingly "obtain

15  or attempt to obtain a controlled substance ... (ii) by forgery or alteration of a prescription or written

16  order[.]" The pharmacist was suspicious of the prescription and thought it was possibly forged

17  because it appeared to have been written by two different people, appeared to have been written in

18  two different inks, and was for an unusual number of pills.  (Homan Aff., Ex. 1, Request for

19  Admissions No. 6.)  The pharmacist called the doctor's office in an attempt to verify it.  The

20  pharmacist then called 911 to report the allegedly forged prescription, and when the officer arrived

21  on July 6, 2002, he advised the officer that the doctor's office had said that they had not issued the

22  prescription.  The next day when O'Brian returned to get the prescription, the pharmacist, as he was

23  instructed, called 911, and reported to the responding officers, Torres and Fischer, that the doctor's

24  office had said that they had not issued the prescription.  Based on this information, the officers made

25  the arrest.

26  ORDER - 5

1    Plaintiff argues that the arresting officers had no other information than that of being

2    dispatched to the Walgreen's regarding a customer who had presented a prescription that was

3    allegedly false.  But the information that the officer had collected from the pharmacist the day before

4    was conveyed by Law Enforcement Support Agency (LESA) to the arresting officers the next day

5    after the pharmacist called.  A member of the pharmacy staff pointed O'Brien out to the officers.

6    Moreover, "... probable cause may be founded upon hearsay and upon information received from

7    informants ... ," *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 2681 (1978), and police officers

8    may arrest based on information relayed through official police channels.  *See United States v.*

9    *Calhoun*, 542 F.2d 1094, 1100 (9th Cir. 1976), cert. denied, 429 U.S. 1064 (1977).  Probable cause

10   can be demonstrated through the collective knowledge of the police officers involved in an

11   investigation, even if some of the information known to other officers is not communicated to the

12   arresting officer.  *United States v. Bernard*, 607 F.2d 1257, 1267 (9th Cir. 1979).

13   Plaintiff also contends that the arresting officers possessed inconsistent or exculpatory

14   information.  The arresting officers had the information gathered by the police officer responding to

15   the 911 call the day before.  (Fischer Aff., ¶ 3) No arrest was made the day before on July 6, because

16   O'Brien left before the officer arrived.  *Id.*  Officer Torres spoke with Chad Randall the Walgreen's

17   pharmacist, and the pharmacist told Torres that he had spoken with Dr. Spence and Dr. Spence said

18   that he had not issued the prescription in question.  (Withey Decl., Ex. 7, p 10, ll 14-25; 11, ll 1-23.)

19   Officer Fischer spoke with a pharmacy technician, Sophie Cahhy, who told Officer Fischer that

20   "they" had tried to call Dr. Spence, but had been unable to reach him as he was out of town.

21   (Fischer Aff. ¶ ¶ 11 and 12.)  Ms. Cahhy also stated to Officer Fisher that "they" spoke with Dr.

22   Spence's partner, Dr. Brown, who said that Dr. Spence had not issued the prescription in question.

23   This information is of the same tenor as that imparted by the pharmacist: that Dr. Spence did not

24   issue the prescription in question. The information that the arresting officers received when they

25   arrived at the Walgreen's pharmacy was consistent with the information that the responding officer

26   ORDER - 6

1  received the day before.

2       Plaintiff points to the note that the pharmacist wrote on the back of the prescription as being

3  exculpatory; the note states:

4                                Dr. Spence or Walker
                                  206-381-9224
5                               Dr. Said to hold off
                              If you have severe HA
6                                    go to ER
                                 per Dr. Walker
7

8  (Homan Aff. Ex. 5 (as contained in Ex. 1 to Darland Dep.)  It is undisputed that the arresting officers

9  did not see this note written by the pharmacist.  This note does not, however, appear to be

10  exculpatory as it does not contradict anything that the pharmacist told Officers Torres and Fischer.

11  Officers Torres and Fischer had probable cause to arrest Plaintiff under all the circumstances.

12                                          **II**

13       Defendants argue that they were acting within their discretionary authority and are shielded

14  by a qualified immunity from suit.  Qualified immunity shields government officials so long as their

15  actions could reasonably have been thought consistent with the rights they are alleged to have

16  violated.  *Anderson v. Creighton*, 483 U.S. 635 (1987).  In determining whether a police officer is

17  properly asserting qualified immunity, a court engages in a two-step analysis:

18       A qualified immunity defense must be considered in proper sequence.  A ruling should
         be made early in the proceedings so that the cost and expenses of trial are avoided
19       where the defense is dispositive.  Such immunity is an entitlement not to stand trial,
         not a defense from liability. [citations omitted.] The initial inquiry is whether a
20       constitutional right would have been violated on the facts alleged, for if no right
         would have been violated, there is no need for further inquiry into immunity.
21       However, if a violation could be made out on a favorable view of the parties'
         submissions, the next, sequential step is whether the right was clearly established.
22       This inquiry must be undertaken in light of the case's specific context, not as a broad
         general proposition.  The relevant, dispositive inquiry is whether it would be clear to a
23       reasonable officer that the conduct was unlawful in the situation he confronted.

24  *Saucier v. Katz*, 533 U.S. 194 (2001). "Even law enforcement officials who 'reasonably but

25  mistakenly conclude that probable cause is present' are entitled to immunity."  *Brian v. Hunter*, 502

26  ORDER - 7

1    U.S. 224, 227 (1991).

2           Plaintiff has not rebutted the presumption of qualified immunity in this case.  The arresting

3    officers had probable cause to make the arrest.  The officers had reasonably trustworthy information

4    available through LESA and again at the scene when they spoke with the pharmacist and the

5    pharmacy technician that O'Brien was attempting to fill a forged prescription in violation of

6    Washington's Controlled Substance Act.  Even if one were to conclude that the officers made a

7    mistake, it was reasonable and they are entitled to dismissal pursuant to the doctrine of qualified

8    immunity.

9                                                          **III**

10          On the issue of municipal liability, the plaintiff must prove: "(1) that the plaintiff possessed a

11   constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this

12   policy 'amounts to deliberate indifference' to the plaintiff's constitutional rights; and (4) that the

13   policy is the 'moving force behind the constitutional deprivation.'" *Van Ort v. Estate of Stanewich*,

14   92 F.3d 831 835 (9th Cir. 1996).

15          The court has concluded that there was probable cause to arrest Plaintiff O'Brien, so Plaintiff

16   cannot meet the first element.  Plaintiff merely asserts her conclusion that the City had a policy,

17   pattern, or practice of making exculpatory evidence unavailable to its officers.  This assertion does

18   not satisfy the second element.  There is no evidence to support a claim of municipal liability against

19   the City of Tacoma under 42 U.S.C. § 1983.

20                                                         **IV**

21          Under the "public duty doctrine," there is no liability for a public official's negligent conduct

22   unless it is shown that 'the duty breached was owed to the injured person as an individual and was

23   not merely the breach of an obligation owed to the public in general(i.e. a duty to all is a duty to no

24   one)." *Torres v. City of Anacortes*, 97 Wn. App. 64, 73, 981 P.2d 891 (1999) *rev. denied* 140

25   Wn.2d 1007 (2000).  There is no cause of action for negligent police investigation. *Dever v. Fowler*,

26   ORDER - 8

1  63 Wash. App. 35, 45, 816 P.2d 1237 (1991), review denied, 118 Wash. 2d 1028, 828 P. 2d 563

2  (1992).  Plaintiff merely responds that the public duty doctrine does not apply because the police

3  officers caused damage to Plaintiff as a result of the negligent performance of their duties.  Plaintiff

4  has made no showing that any of the four recognized exceptions to the public duty doctrine apply in

5  this case: (1) legislative intent, (2) failure to enforce when there is actual knowledge of a statutory

6  violation, (3) rescue doctrine: failure to exercise reasonable care when coming to the aid of a

7  particular plaintiff, and (4) where a special relationship exists setting the injured plaintiff off from the

8  general public.  Plaintiff's negligence claims, therefore, must be dismissed.

9  **CONCLUSION**

10      There are several grounds for dismissing this cause of action.  First, judicial estoppel applies,

11  because Plaintiff O'Brien asserted in her state court case that Walgreen's was solely responsible for

12  her arrest and she signed a Confirmation of Joinder confirming that no additional parties were to be

13  named nor additional claims to be asserted, and she ultimately settled her claim with Walgreen's for a

14  substantial sum.  Second, the officers had probable cause to arrest O'Brien because the pharmacist

15  and the pharmacist technician both stated that Dr. Spence had not issued the prescription, and it was

16  reasonable under all the circumstances for the officers to believe these individuals and arrest O'Brien

17  for attempting to obtain a controlled substance by means of a forged prescription.  Officers Torres

18  and Fischer, therefore, are entitled to judgment based on qualified immunity.  There is no evidence

19  on which to base a prima facie case of municipal liability against the City of Tacoma under Section

20  1983.  Finally, Plaintiff O'Brien's negligence claims against all the parties fail because they are barred

21  by the public duty doctrine and Plaintiff has failed to establish that any of the exceptions to the

22  doctrine apply.  Accordingly, Defendants are entitled to judgment on all claims.

23      NOW, THEREFORE,

24

25      IT IS ORDERED:

26  ORDER - 9

1  1.  Defendants' Motion for Summary Judgment Re: Estoppel and Release [Dkt. # 18] is

2     GRANTED;

3  2.  Defendants' Motion for Summary Judgment Re: Plaintiff's § 1983 & Negligence

4     Claims [Dkt. # 22] is GRANTED;

5  3.  This cause of action is DISMISSED;

6  4.  The Clerk of the Court shall enter JUDGMENT for Defendants according to this

7     Order.

DATED this 24th day of August, 2005.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 10